IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

SHEILA D. LYNCH, :
:
    Plaintiff, :
:
vs. : Civil Action No.
: **5:07-CV-337 (HL)**
MICHAEL J. ASTRUE, :
Commissioner of Social Security, :
:
    Defendant. :

## RECOMMENDATION

    The plaintiff herein was found to be disabled as of September 12, 2000, and began receiving benefits accordingly. On December 10, 2004, it was determined that the plaintiff was no longer disabled as of December 1, 2004. This decision was upheld upon reconsideration after a disability hearing by a Disability Hearing Officer. Thereafter, plaintiff requested hearing before an Administrative Law Judge, which was held on October 5, 2005. The ALJ affirmed the cessation decision on August 10, 2006. This court has jurisdiction under §§ 205(g), 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3). All administrative remedies have been exhausted.

    Plaintiff was found disabled as of September 12, 2000, because she met the requirements of section 12.04 of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (2007) (Tr. 30-35). This Listing section provides for presumptive disability due to an affective disorder.

In the current hearing decision, the ALJ determined that plaintiff had medically improved since

her last favorable decision (August 30, 2002) and that by December 1, 2004, had the residual functional capacity to perform no more than unskilled, sedentary work subject to the need for a sit/stand option; with no overhead reaching or looking; with no exposure to concentrated fumes or dust; with only occasional neck motion; no bending or kneeling; and no use of foot controls. Based on this RFC, the ALJ determined the claimant cannot perform her past relevant work., but that she had the residual functional capacity to perform the full range of sedentary work.

DISCUSSION

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Richardson v. Perales, 402 U.S. 389, 401 (1971). In reviewing the ALJ's decision for support by substantial evidence, this court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." Bloodsworth, 703 F.2d at 1239. "In contrast, the [Commissioners'] conclusions of law are not presumed valid....The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." Cornelius, 936 F.2d at 1145-1146.

The issue was whether the claimant's disability ended under section 223(f) of the Social Security Act. To determine if the claimant continues to be disabled, the Commissioner must follow an eight-step evaluation process (20 CFR 404.1594).

At step one, the Commissioner must determine if the claimant is engaging in substantial gainful activity. If the claimant is performing substantial gainful activity and any applicable trial work period has been completed, the claimant is no longer disabled (20 CFR 404.1594(f)(1)).

At step two, the Commissioner must determine whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). If the claimant does, her disability continues (20 CFR 404. 1594(f)(2).

At step three, the Commissioner must determine whether medical improvement has occurred (20 CFR 404.1594(f)(3)). Medical improvement is any decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs and/or laboratory findings (20 CFR 404. 1594(b)(1)). If medical improvement has occurred, the analysis proceeds to the fourth step. If not, the analysis proceeds to the fifth step.

At step four, the Commissioner must determine whether medical improvement is related to the ability to work (20 CFR 404.1594(f)(4)). Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities (20 CFR 404.1594(b)(3)). If it does, the analysis proceeds to the sixth step.

At step five, the Commissioner must determine if an exception to medical improvement applies (20 CFR 404.1594(f)(5)). There are two groups of exceptions (20 CFR 404.1594(d) and (e)). If one of the first group exceptions applies, the analysis proceeds to the next step. If one of

the second group exceptions applies, the claimant's disability ends. If none apply, the claimant's disability continues.

At step six, the Commissioner must determine whether all the claimant's current impairments in combination are severe (20 CFR 404.1594(f)(6)). If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled. If they do, the analysis proceeds to the next step.

At step seven, the Commissioner must assess the claimant's residual functional capacity based on the current impairments and determine if she can perform past relevant work (20 CFR 404.1594(f)(7)). If the claimant has the capacity to perform past relevant work, her disability has ended. If not, the analysis proceeds to the last step.

At the last step, the Commissioner must determine whether other work exists that the claimant can perform, given her residual functional capacity and considering her age, education, and past work experience (20 CFR 404.1594(f)(8)). If the claimant can perform other work, she is no longer disabled. If the claimant cannot perform other work, her disability continues. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience.

Plaintiff argues only that the ALJ did not consistently describe plaintiff's residual functional capacity in his decision and that the vocational expert's testimony was invalid because her methodology for determining the numbers of jobs available was not reliable (plaintiff's brief, pp. 13-25).

*Vocational Expert*

The vocational expert was Ms. Vivian Hanna. Prior to her testimony, plaintiff's attorney stipulated to her qualifications (Tr. 642). A review of Ms. Hanna's resume reveals that she has had many years of experience in vocational issues (Tr. 84-85). She has been a management consultant on vocational issues and a vocational expert since 1991 (Tr. 84-85). As such, she provides services to private industry such as job analysis, employability evaluation, labor market surveys, and job placement (Tr. 84-85). She also regularly provides expert testimony at administrative hearings and trials (Tr. 84-85).

At the hearing, Ms. Hanna testified that she was familiar with SSA's disability definitions and disability issues (Tr. 642). In response to an initial hypothetical question, which did not include all of the limitations ultimately found by the ALJ, Ms. Hanna identified three jobs (Tr. 643-645): 1) call out operator, Dictionary of Occupational Titles (DOT) #237.367-014, with 300 positions in Georgia and 24,000 jobs nationally; 2) surveillance system monitor, DOT #379-367-010, with 1,000 jobs in Georgia and 95,000 jobs nationally; and 3) taper, DOT #017-684-010, with 300 jobs in Georgia and 35,000 jobs nationally (Tr. 643-45). In response to another hypothetical questions, which included the limitations the ALJ ultimately found, Ms. Hanna eliminated the call out operator job (Tr. 645-47).

Plaintiff's attorney, noting that the DOT referred only to government surveillance system monitors, questioned Ms. Hanna's identification of monitor jobs (Tr. 647-52). Ms. Hanna explained that there were surveillance system monitor jobs outside of government, but that in government transportation terminals in Georgia alone, there would be at least 1,000 jobs, noting

5

that Hartsfield-Jackson International Airport, MARTA, and other airports in Georgia all employ enough surveillance system monitors to monitor these facilities at all times (Tr. 647-52). She stated that "this is a job we see everywhere" (Tr. 652).

After further questioning, Ms. Hanna further explained that she extrapolated the number of jobs from Department of Labor surveys (Tr. 650). She noted that the Department of Labor publishes categories of types of jobs on the Internet and that one has to separate out a specific job from the category (Tr. 650). She explained that she looked at the state OES code, in this case 63099, which was a classification including "all other protective service workers" (Tr. 653). This category included nine jobs, including the surveillance system monitor job (Tr. 653). She testified that she used her judgment, experience, observation, and work in the field to extrapolate from the number of jobs in the category the specific number of surveillance system monitor jobs (Tr. 651, 653). The jobs included both private and government jobs (Tr. 654). She stated that she used the same method to calculate the number of taper jobs available (Tr. 657).

Plaintiff's attorney was not satisfied with Ms. Hanna's methodology and insisted that her testimony could not be reliable and that he did not believe that there were 1,000 surveillance system monitor jobs in Georgia (Tr. 659-60).

The ALJ found that although the vocational expert's testimony that her numbers of available jobs were based upon a "conservative estimate" without benefit of her own surveys or statistical analysis, she did cite her reliance upon the Dictionary of Occupational Titles and statistics available through the Georgia Department of Labor, including a specific OEC code identifier. The vocational expert further cited her expertise with respect to the Surveillance System Monitor based upon data relative to the availability of jobs at the Metro Atlanta Rapid Transit Authority

6

(MARTA) and Hartsfield-Jackson International Airport. The ALJ concluded that her credentials in conjunction with her stated basis for her opinion are sufficient to support her opinion under 20 C.F.R. 404.1564(c) and 20 C.F.R. 404.1566(d) and (e). (Tr. 23).

A vocational expert may offer evidence at an administrative hearing "even though inadmissible under rules of evidence applicable to court procedure." 42 U.S.C. § 405(b)(1). The Eleventh Circuit has recognized the value of a vocational expert in providing local information detailing jobs in the regional community; the methods approved include information from a personal survey, contact with employers and other vocational experts, and a survey of literature such as census reports and county business patterns. See Jones v. Apfel, 190 F.3d 1224, 1230 (11th Cir. 1999).

The undersigned finds that the ALJ adequately explained his reliance on the opinion of the vocational expert, and such decision was based upon substantial evidence.

*Residual Functional Capacity*

As pointed out by the plaintiff, the ALJ did at one point state that plaintiff could perform a full range of sedentary work. As plaintiff notes, the ALJ outlined a limited range of sedentary work and then referred to a full range of sedentary work (Tr. 21, 23). However, any error that occurred appears to be inadvertent. The hypothetical questions posed to the vocational expert did include all of the specific limitations outlined by the ALJ in his more detailed finding (Tr. 21, 643-47).

A remand to correct the record in this instance, when the outcome would be identical to the one actually reached, would be a waste of time and resources. See Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997); Bechtold v. Massanari, 152 F. Supp. 2d 1340, 1349 (M.D. Fla.

2001); see also <u>Heston v. Comm'r of Soc. Sec.</u>, 245 F.3d 528, 535-36 (6th Cir. 2001) (finding no reversible error when ALJ did not explain weight given physician's opinion because opinion was not supported by the record); <u>Ward v. Comm'r of Soc. Sec.</u>, 211 F.3d 652, 656 (1st Cir. 2000) ("a remand is not essential if it will amount to no more than an empty exercise"); <u>Fisher v. Bowen</u>, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

Inasmuch as the Commissioner's final decision in this matter is supported by substantial evidence, it is the RECOMMENDATION of the undersigned that the Commissioner's decision be **AFFIRMED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 6th day of August, 2008.

        //S Richard L. Hodge
        RICHARD L. HODGE
msd         UNITED STATES MAGISTRATE JUDGE